<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**</u>

| | | |
|---|---|---|
| LANGAN ENGINEERING AND ENVIRONMENTAL SERVICES, INC., | : : : : | |
| Plaintiff, | : : | Civil Action No. 07-2983 (JAG) |
| v. | : : : | **OPINION** |
| GREENWICH INSURANCE COMPANY, ILLINOIS NATIONAL INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OHIO CASUALTY INSURANCE COMPANY, UNITED STATES FIDELITY AND GUARANTY COMPANY, VIRGINIA SURETY INSURANCE COMPANY, INC., | : : : : : : : : : | |
| Defendants. | : : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motions of Defendants Greenwich Insurance Company ("Greenwich"), and Ohio Casualty Insurance Company ("Ohio Casualty") (collectively "Defendants"), to dismiss for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons set forth below, Defendants' motions are granted.

**I.  <u>INTRODUCTION</u>**

Plaintiff Langan Engineering and Environmental Services, Inc. ("Langan") filed the instant action on May 9, 2007 in the Superior Court of the State of New Jersey, seeking, among

1

other forms of relief,[1]

> a declaration[, pursuant to the New Jersey Declaratory Judgments Act, N.J. STAT. ANN. §§ 2A:16-50 to -62 (2007),] that the terms of the [Greenwich and Ohio Casualty insurance] policies obligate [both Greenwich and Ohio Casualty] to pay the cost of defending claims that have been asserted or will be asserted against [Langan] arising out of the May 12, 2005 collapse of a section of a retaining wall [(the "Wall")] at Castle Village [Owners Corporation's ("Castle Village")][2] property in . . . New York, New York (the "Underlying Claims"), and to indemnify [Langan] for all sums that [Langan] may become legally obligated to pay with respect to the Underlying Claims.

(Compl. ¶ 3.) On June 27, 2007, the matter was removed to this Court.

Defendants Greenwich and Ohio Casualty filed motions to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on July 20, 2007, and July 31, 2007, respectively. Defendants contend that dismissal of the claims against them is warranted for two reasons. First, Defendants claim that Langan failed to allege that the damage supporting the Underlying Claims occurred during the coverage period of the Greenwich and Ohio Casualty insurance policies. (See Def. Greenwich's Br. in Supp. of Mot. to Dismiss ("Greenwich Br.") 1, 12-13; see also Def. Ohio Casualty's Br. in Supp. of Mot. to Dismiss ("Ohio Casualty Br.") 15-16.) Second, Defendants argue that even if this Court finds that the allegations asserted in the

---

[1] Plaintiff Langan brings suit against a number of insurance companies, including Greenwich and Ohio Casualty, enumerating several causes of action. However, for the purpose of resolving the pending motions to dismiss, this Court will consider only those causes of action specific to Greenwich and Ohio Casualty.

[2] Castle Village is a cooperative corporation that owns substantial real estate in New York, NY. (See Letter from Burt M. Garson, Attorney for Plaintiff, Ex. B ("Castle Village Verified Fourth Am. Compl.") at ¶ 11, Jan. 2, 2008). In early 2002, Castle Village contracted with Langan to perform engineering-related services on the Wall. (Castle Village Verified Fourth Am. Compl. ¶ 25.) After the Wall collapse, Castle Village sued Langan, and others, for the costs associated with rebuilding the Wall and surrounding area, monies paid by New York City relating to clean-up and emergency services, and monies potentially owed to individuals who suffered property damage as a result of the Wall collapse. (Id. at ¶¶ 46, 50-55.)

Castle Village complaint occurred within the period of coverage for the Greenwich and Ohio Casualty insurance policies, they are prohibited by certain exclusions within each policy. (See Greenwich Br. 14-15; Ohio Casualty Br. 17-18.)

## II. FACTUAL BACKGROUND

> Castle Village is a cooperative corporation that owns approximately 7 ½ acres of land overlooking the Hudson River, located between Cabrini Boulevard and the Henry Hudson Parkway[,] and 181st Street to Alex Rose Place, in New York, NY ("the Parcel"). The Parcel contains five residential towers, two residential cottages, a 400-car parking garage and substantial open land, and is bounded on three sides by a structural and retaining wall . . . .

(Castle Village Verified Fourth Am. Compl. ¶ 11.)

> In . . . January 2002, Castle Village retained Langan to perform and/or furnish . . . all engineering and related services necessary for the inspection and evaluation of all existing conditions of the Wall, and to assess and recommend the short and long term measures for monitoring, maintaining and/or repairing the Wall.

(Id. at ¶ 25.) Castle Village and Langan, therefore, entered several agreements regarding Langan's future performance, that were approved on January 7, 2002; June 6, 2002; August 9, 2002; September 13, 2002; February 27, 2003; December 16, 2003; January 7, 2004; and September 2, 2004. (Id. at ¶ 26.)

> On May 12, 2005, a large section of the Wall . . . failed, with the result that portions of the Wall and a large quantity of debris, including boulders, dirt, benches and other objects, fell onto the sidewalk and roadways, causing damage to the property of the City of New York [] and the State of New York [] and blocking the sidewalk, Riverside Drive and a portion of the northbound Henry Hudson Parkway in the vicinity of the Wall. . . . [T]he falling portions of the Wall and debris hit and damaged the personal property of third parties, including one or more automobiles.

(Id. at ¶ 35; see also Compl. ¶ 16.) As a result of this collapse, Castle Village brought suit against several entities, including Langan, in the Supreme Court of the State of New York. (Compl. ¶ 17; see generally, Castle Village Verified Fourth Am. Compl.) Castle Village

3

> alleged that [Langan] committed professional negligence and breached several engineering and related service agreements between [Langan] and Castle Village in connection with services that [Langan] provided to Castle Village, commencing in the second half of 2002, with respect to the [r]etaining [w]all prior to the [c]ollapse . . . . Castle Village also seeks damages against [Langan] as a result of allegedly defective construction work performed by Morris Park Contracting Corporation ("Morgan Park") . . . in the summer and fall of 2004 at the Castle Village Property. Castle Village seeks damages in excess of $20,000,000.00 . . . .

(Id. at ¶ 16.)

In June 2007, Castle Village sought leave of the Supreme Court of the State of New York to file a fourth amended complaint,[3] and add an additional claim "alleging that Langan knew or should have known of the imminence of the [c]ollapse but failed to warn Castle Village." (Id. at ¶¶ 1, 18.) On December 27, 2007, Judge Helen E. Freedman granted Castle Village's motion for leave to amend. (See Letter from Burt M. Garson, Attorney for Plaintiff, Ex. A, Jan. 2, 2008). Castle Village added two claims against Langan in its Verified Fourth Amended Complaint. The first cause of action stated a claim for negligent misrepresentation and failure to warn, while the second claim sounded in negligence and a failure to warn. (Castle Village Verified Fourth Am. Compl. ¶¶ 108-126.)

As a result of Castle Village's suit against it, Langan brought suit against Defendants Greenwich and Ohio Casualty, each of which sold comprehensive general liability ("CGL") and excess liability insurance policies, respectively, to Langan between April 22, 2002 and September 1, 2006. (Compl. ¶¶ 20-21.) These policies, Langan claims, require both Greenwich and Ohio Casualty to pay the costs of litigating the Underlying Claims, and to indemnify Langan for monies Langan may be legally obligated to pay to Castle Village for costs relating to the May

---

[3] Castle Village sought, and was granted, leave to file three amended complaints prior to the June 2007 motion.

12, 2005 Wall collapse. (Id. at ¶¶ 30-31, 34-35.)

The Greenwich Commercial Line Policy and Commercial Excess Policy cover "damages because of 'bodily injury' or 'property damage'. . . caused by an 'occurrence' that takes place in the 'coverage territory' . . . during the policy period." (See Certification of William Krauss ("Krauss Certif.") Exs. B-5 and C-4, July 20, 2007.) Similarly, the Ohio Casualty Commercial Excess Liability Policy covers "the amount of 'loss' . . . in excess of the 'Underlying Limits of Insurance'." (See Certification of Gretchen B. Connard ("Connard Certif.") Ex. B at 6, July 31, 2007.) The Ohio Casualty policy, therefore, is not triggered until the Greenwich policy limits have been exhausted.

### III. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to

be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340) (2d ed. 1990).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the

6

complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).[4]  Any further expansion beyond the

---

[4] Defendant Greenwich submitted copies of two insurance policies that provide coverage to Langan.  (Krauss Certif. Exs. B and C.)  The first policy is entitled "Commercial Lines Policy," and bears the policy number GEC0011495.  (Krauss Certif. Ex. B.)  This policy provides that the policy period runs from April 22, 2002 to April 22, 2003.  (Id.)  The second policy, "Commercial Excess Follow Form and Umbrella Liability Policy (Occurrence)," bears the policy number UEC0011494, and also states as its policy period April 22, 2002 to April 22, 2003.  (Krauss Certif. Ex. C.)

Defendant Ohio Casualty also submitted an insurance policy providing coverage to Langan.  (Connard Certif. Ex. B.)  This policy is entitled "Commercial Excess Liability (Occurrence)," and bears the policy number ECO (03) 52 94 21 66.  (Id.)  The policy period runs from April 22, 2002 to April 22, 2003.  (Id.)

Plaintiff Langan submitted copies of the New York City Department of Buildings' Board of Inquiry Report, and Castle Village's Verified Fourth Amended Complaint, as well as a variety of other documents.  (See Langan Br. in Opp'n to Greenwich Mot. to Dismiss ("Langan Opp'n to Greenwich"), Aff. of Edward Tessler Exs. C and E, Sept. 21, 2007; see also Langan Br. in Opp'n to Ohio Casualty Mot. to Dismiss ("Langan Opp'n to Ohio Casualty"), Aff. of Edward Tessler Exs. B and E, Sept. 21, 2007.)

The documents submitted by Defendants and Plaintiff may only be considered by this Court if they are "*integral to or explicitly relied upon* in the [C]omplaint."  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426) (emphasis in original)).  Greenwich's Commercial Lines and Commercial Excess Policies, and Ohio Casualty's Commercial Excess Policy form the basis of Plaintiff's claims against both Greenwich and Ohio Casualty.  (Compl. ¶¶ 20-21.)  These insurance policies are also explicitly referenced in the Complaint.  (Id.)  Similarly, Castle

pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(d).

## IV. DISCUSSION

Defendants Greenwich and Ohio Casualty argue that: (1) "Langan fails to allege specific facts to bring either potentially covered property damage or bodily injury within the period of the [insurance] policies," (see Greenwich Br. 12; see also Ohio Casualty Br. 16) (stating that "Langan's [] Complaint should be dismissed because it fails to state a cause of action as there is no allegation that a potentially covered occurrence took place during the Ohio Casualty policy period."), and (2) that even if this Court finds that the allegations of Castle Village's complaint occurred within the Greenwich and Ohio Casualty policy periods, the allegations are excluded from coverage by the "Engineers, Architects or Surveyors Professional Liability Exlusion[;] the Construction Management Errors and Omissions Exclusion[;] and the Testing or Consulting Errors and Omission Exclusion in the Greenwich [Commercial Lines Policy] and the Professional Liability Exclusion in the [Greenwich Commercial Excess Liability Policy]," (see Greenwich Br. 15; see also Ohio Casualty Br. 17-18.)

Plaintiff Langan counters and claims that the Underlying Claims set forth in the Castle Village complaint allege property damage in 2002. (See Langan Opp'n to Greenwich 6-7; see also Langan Opp'n to Ohio Casualty 13-14.) Specifically, Plaintiff argues that the alleged property damage "consist[ed] of 'cracks, water seepage, missing mortar, and fallen stones.'" (Id. (citing Castle Village's Verified Fourth Am. Compl. ¶¶ 27, 112-115); see also Langan Opp'n to

---

Village's Verified Fourth Amended Complaint is relied upon in the Complaint, and provides the foundation for the Underlying Claims against Langan. (Id. at ¶¶ 1, 18.) Therefore, this Court will only consider these documents in resolving the pending motions to dismiss.

8

Ohio Casualty 13-14 (same).)  Therefore, Plaintiff contends, the property damage occurring in 2002, "constitutes an occurrence triggering Greenwich's [and Ohio Casualty's] duties under the Policies for *all* of the damage that is part of that continuing process of erosion, including the eventual Collapse of the wall in 2005."  (Id. at 9; see also Langan Opp'n to Ohio Casualty 16.)  Similarly, Langan argues that "claims alleging negligence and failure to warn fall outside the professional liability exclusion."  (Langan Opp'n to Greenwich 9-10) (citing S.T. Hudson Eng'rs v. Penn. Nat'l Mut. Cas. Co., 909 A.2d 1156, 1165-66 (N.J. Super. Ct. App. Div. 2006); Langan Opp'n to Ohio Casualty 16-17) (same)).

"In general, insurance policies cover losses resulting from 'occurrences' that take place during the policy period."  Quincy Mut. Fire Ins. Co. v. Borough of Bellmawr, 799 A.2d 499, 502 (N.J. 2002).  "Therefore, when an insured has been covered by several policies over the relevant period of time, identifying the appropriate trigger of coverage, or when an occurrence took place, will be critical in determining which insurer is liable for the damages that have accrued."  Id. at 503.  The Third Circuit states that the general rule for

> determination of when an occurrence happens must be made by reference to the time when the injurious effects of the occurrence took place.  "There can be no question but that the aspect of the occurrence which must take place within the policy period . . . is the 'result,' that is, the time when the accident or injurious exposure produces personal injury."

Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61-62 (3d Cir. 1982) (internal citations omitted); see also Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483 A.2d 402, 409 (N.J. 1984) (quoting Muller Fuel Oil Co. v. Ins. Co. of N. Am., 232 A.2d 168, 175 (N.J. Super. Ct. 1967) ("As a general rule the time of the 'occurrence' of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed but the time

9

when the complaining party was actually damaged. 'The time of the accrual of the insured's liability is the determining factor, not the time of an event which ultimately results in liability.'")); Wrecking Corp. of Am. v. Ins. Co. of N. Am., 574 A.2d 1348, 1350 (D.C. Cir. 1990) (citing Aetna Cas. & Sur. Co. v. PPG Indus., Inc., 554 F. Supp. 290, 294 (D. Ariz 1983) ("[T]he prevailing rule is that 'property damage occurs' at the time the damage is discovered or when it has manifested itself.")). The Third Circuit reasons that its "adoption of the 'effect' test for determining when the occurrence took place is dictated by the reasonable expectations of the insured in purchasing a policy of this type." Id. at 62.

"This general rule has a limited exception" which is seemingly reserved for asbestosis, toxic tort, and environmental spills claims. Fed. Ins. Co. v. Dentsply Int'l Inc., No. 06-991, 2007 U.S. Dist. LEXIS 85442, *12 n.5 (M.D. Pa. Nov. 19, 2007); see also Wrecking Corp., 574 A.2d at 1350; Quincy Mut. Fire Ins. Co., 799 A.2d at 503. The "exception exists where the damage can be characterized as being 'continuous or progressive.' In these situations the initial damage occurred, *i.e.*, was evident, during the policy period and further damage occurred afterward." Wrecking Corp., 574 A.2d at 1350 (internal citations omitted) (emphasis in original).

Plaintiff contends that its claims fall within this limited exception. (See Langan Opp'n to Greenwich 6-9; see also Langan Opp'n to Ohio Casualty 13-16.) This Court disagrees.

In order to determine whether Langan's claims are covered by the Greenwich and Ohio Casualty insurance policies, this Court must first look to the scope of coverage, as defined by the respective policies. First, Greenwich's Commercial Line Policy provides

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . This insurance applies to "bodily injury" and "property damage" only if: (1) [t]he

10

> "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and (2) [t]he "bodily injury" or "property damage" occurs during the policy period.

(Krauss Certif. Ex. B-5.)  Similarly, Greenwich's Commercial Excess Policy provides

> The Company will pay on behalf of the Insured those sums in excess of the Self-Insured Retention that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury not covered by Scheduled Underlying Insurance, provided that: (1) the Bodily Injury or Property Damage is caused by an Occurrence happening anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period. . . .

(Krauss Certif. Ex. C-4.)  Finally, the Ohio Casualty Commercial Excess Liability Policy provides

> We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item 5 of the Declaration, subject to INSURING AGREEMENT Section II, Limits of Insurance.  Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

(Connard Certif. Ex. B at 6.)

The language of the Greenwich policies clarifies that an insured is covered for property damage, only when the damage: (1) takes place in the coverage territory, and (2) occurs during the policy period.  (Krauss Certif. Ex B-5 and C-4.)  The parties do not take issue with the first element. (See generally, Greenwich Br.; see also Ohio Casualty Br; Langan Opp'n to Greenwich; Langan Opp'n to Ohio Casualty.)  Therefore, this Court will focus on the term of the policy period.  The relevant period for the Greenwich policies is April 22, 2002 to May 20, 2003.[5]  The

---

[5] Although both Greenwich policies express a policy period extending from April 22, 2002 to April 22, 2003, counsel for Greenwich acknowledged, during oral argument on the pending motions to dismiss, that the policies were extended by approximately one month to May 20, 2003.  (See Mot. to Dismiss Hr'g Tr. 7:25-8:1.)

Ohio Casualty policy period is slightly shorter. The insurance coverage extends from April 22, 2002 to April 22, 2003. (Connard Certif. Ex. B.) However, Ohio Casualty's excess policy is not triggered until the coverage from the Greenwich policies has been exhausted. (Connard Certif. Ex. B at 6; see also Mot. to Dismiss Hr'g Tr. 14:6-10.)

Langan's Complaint, as well as Castle Village's Verified Fourth Amended Complaint, expressly provide that the property damage forming the basis of the Underlying Claims is the wall collapse on May 12, 2005. (Compl. ¶¶ 3, 17; see also Verified Fourth Am. Compl. ¶ 35.) This damage falls far outside of the Greenwich and Ohio Casualty policy periods.[6] Langan,

---

[6] While Langan also claims that property damage "consisting of 'cracks, water seepage, missing mortar, and fallen stones[,]'" occurred in 2002, during the Greenwich and Ohio Casualty policies' coverage period, (Langan Opp'n to Greenwich 6-7 (citing Castle Village Verified Fourth Am. Compl. ¶¶ 27, 112-115); see also Langan Opp'n to Ohio Casualty 13-14 (same)), this allegation does not save Langan's Complaint from dismissal.

Langan relies on paragraphs 27, and 112-115 of Castle Village's Verified Fourth Amended Complaint. Paragraph 27 states that "Langan purportedly performed and/or purported to furnish engineering and related services, including but not limited to those services set forth in the Langan [] Agreements, from the year 2002 to May 12, 2005." (Castle Village Verified Fourth Am. Compl. ¶ 27.) Paragraphs 112-115, on the other hand, allege that Langan failed to perform its services adequately because it did not notify Castle Village of the Wall's conditions. (Id. at ¶¶ 112-115.) Specifically, Castle Village alleges that

> after [Langan] arrived on the Castle Village site . . . the Wall was exhibiting deterioration at the locations where the Wall ultimately failed; . . . a section of the Wall within the failure zone was moving continuously in both a westerly and northerly direction prior to the failure of that section of the Wall; . . . surface cracks parallel to the Wall and sinkholes of increasing size and dimension were developing on the grounds behind the Wall; . . . the exterior wythe of the Wall was pulling away from the balance of the Wall in the section that ultimately failed; . . . bulges were developing in the Wall in the same area or areas where the Wall ultimately failed; and . . . "global deep seated movements" were occurring within the Wall in the *weeks and months prior to failure of the Wall*.

(Id. at ¶ 115) (emphasis added). "Notwithstanding Langan's knowledge of the [Wall's deteriorating conditions], and its knowledge that if nothing were done, the Wall would fail,

12

however, argues that the continuous trigger theory is applicable here.

"While the continuous trigger theory remains useful and, indeed, quite powerful, it should not be applied where it is inappropriate to do so." Prolerized Schiabo Neu Co. v. Hartford Accident and Indem. Co., 990 F. Supp. 356, 364 (D.N.J. 1997). The theory should not be applied here.

Langan claims that the theory has been applied to a similar set of facts as those before this Court, albeit only on this one particular occasion. (See Mot. to Dismiss Hr'g Tr. 16:10-17:22.) In S.T. Hudson Engineers, a pier "located on the western shore of the Delaware River in Philadelphia, collapsed into the river causing three deaths and numerous injuries to patrons of a restaurant/nightclub situated on the pier, along with significant property damage." 909 A.2d at 1159. The trial court judge found "that the continuous trigger theory applied, rendering [the

---

Langan failed to warn Castle Village or anyone else of the known dangers. (Id. at ¶ 116.)

While it may be accurate for Langan to assert that damage to the Wall existed in 2002, during the coverage period for the Greenwich and Ohio Casualty policies, there is no allegation that Langan caused the damage. (See generally, Castle Village Verified Fourth Am. Compl.; see also Compl.) In fact, Castle Village's complaint asserts that the damage was caused by Mueser Rutledge Consulting Engineers, a third-party defendant in the Castle Village action, before Langan contracted with Castle Village. (Id. at ¶¶ 112-115.) Even reading the allegations most favorably to Langan, these statements allege, at most, negligent conduct on the part of Langan. (Mot. to Dismiss Hr'g Tr. 11:3-22.) An allegation of negligence, however, does not amount to an allegation of property damage.

Finally, it is clear that Castle Village seeks recovery for damage costs associated with the Wall's collapse on May 12, 2005, rather than the for cracks, bulges, or "stones that had fallen out of the [W]all that were observed in 2002." (Mot. to Dismiss Hr'g Tr. 11:23-24; see also Castle Village Verified Fouth Am. Compl. ¶¶ 46, 50-55 (stating that "[c]laims arising out of the *failure of the Wall* have been asserted and/or will be asserted against Castle Village . . . . ") Therefore, the property damage alleged does not fall within the coverage period for the Greenwich and Ohio Casualty insurance policies, and Langan's claims against them must be dismissed.

insurer] potentially liable on all its CGL policies from 1994 through 2001." Id. The trial court refined its position later, and found "that the continuous trigger applied only to [the insurer's] potential liability for the property damage claims and not the bodily injury claims." Id. at 1160.

While arguably persuasive, the appellate court did not address the legitimacy of this application. Id. at 1166 ("Our decision renders moot the issues regarding the [trial] judge's findings that the continuous trigger of coverage applied. We, therefore, decline further discussion of that issue."). Therefore, this Court cannot imply from S.T. Hudson Engineers that the continuous trigger theory applies to a structural collapse, or that the New Jersey Supreme Court would lend its imprimatur to such an application. As such, this Court is unwilling to extend the theory beyond application to asbestos, toxic tort, environmental spills, and related cases. See Fed. Ins. Co., 2007 U.S. Dist. LEXIS 85442, at *12 n.5; see also Wrecking Corp., 574 A.2d at 1350; Quincy Mut. Fire Ins. Co., 799 A.2d at 503.[7]

## V. CONCLUSION

For the reasons stated above, the motions of Defendants Greenwich Insurance Company, and Ohio Casualty Insurance Company to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), are granted.

Date: April 4, 2008

                               S/Joseph A. Greenaway, Jr.
                               JOSEPH A. GREENAWAY, JR., U.S.D.J.

---

[7] Even if this Court were inclined to apply the continuous trigger theory, Langan fails to allege a "continuous, progressive, individual damage, a process that had begun in 2002-2003, and continued until 2005, resulting in the collapse." (Mot. to Dismiss Hr'g Tr. 20:5-8; see generally, Compl.)