<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

|  |  |  |
|---|---|---|
| ———————————————— | : | |
| LANGAN ENGINEERING AND | : | |
| ENVIRONMENTAL SERVICES, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-2983 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GREENWICH INSURANCE COMPANY, | : | |
| ILLINOIS NATIONAL INSURANCE | : | |
| COMPANY, LEXINGTON INSURANCE | : | |
| COMPANY, OHIO CASUALTY | : | |
| INSURANCE COMPANY, UNITED | : | |
| STATES FIDELITY AND GUARANTY | : | |
| COMPANY, VIRGINIA SURETY | : | |
| INSURANCE COMPANY, INC., | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion of defendant Virginia Surety Insurance

Company, Inc.,  ("Virginia"), for summary judgment, pursuant to FED. R. CIV. P. 56; and on the

motion of defendant United States Fidelity and Guaranty Company ("USF&G"), for judgment on

the pleadings, pursuant to FED. R. CIV. P. 12(c).  For the reasons set forth below, Virginia's

motion is denied and USF&G's motion is granted.

**I.  <u>INTRODUCTION</u>**

Plaintiff Langan Engineering and Environmental Services, Inc. ("Langan" or "Plaintiff")

filed the instant action on May 9, 2007 in the Superior Court of the State of New Jersey seeking,

among other forms of relief,[1]

> a declaration[, pursuant to the New Jersey Declaratory Judgments Act, N.J. STAT. ANN. §§ 2A:16-50 to -62 (2007),] that the terms of [Virginia's and USF&G's insurance] policies obligate [both Virginia and USF&G] to pay the cost of defending claims that have been asserted or will be asserted against [Langan] arising out of the May 12, 2005 collapse of a section of a retaining wall [(the "Wall")] at Castle Village [Owners Corporation's ("Castle Village")][2] property in . . . New York, New York (the "Underlying Claims"), and to indemnify [Langan] for all sums that [Langan] may become legally obligated to pay with respect to the Underlying Claims.

(See Certification of Therese M. Hough, Attached to Virginia's Notice of Motion ("Hough Cert."), Ex. A at ¶ 3.)  On June 27, 2007, the matter was removed to this Court.

On April 9, 2008, Virginia filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Thereafter, on May 23, 2008, USF&G filed its motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  In support of its motion for summary judgment, Virginia contends that Langan failed to give Virginia timely notification of the Wall collapse, and that such failure constitutes a material

---

[1]Langan brings suit against a number of insurance companies, enumerating several causes of action.  However, for the purpose of resolving the pending motions, this Court will consider only those causes of action specific to Virginia and USF&G.  Previously, Defendant Lexington Insurance Company moved for partial summary judgment.  By Order dated February 20, 2008, this Court denied Lexington's motion for partial summary judgment.  Defendants Greenwich Insurance Company and Ohio Casualty Insurance Company also moved to dismiss claims against them.  By Order dated March 31, 2008, and by Opinion dated April 4, 2008, this Court granted Greenwich's and Ohio's motions to dismiss.

[2] Castle Village is a cooperative corporation that owns substantial real estate in New York, New York.  (See Letter from Burt M. Garson, Attorney for Plaintiff, Ex. B ("Castle Village Verified Fourth Am. Compl.") at ¶ 11, Jan. 2, 2008).  In early 2002, Castle Village contracted with Langan to perform engineering-related services on the Wall.  (Castle Village Verified Fourth Am. Compl. ¶ 25.)  After the Wall collapse, Castle Village sued Langan, and others, for the costs associated with rebuilding the Wall and surrounding area, monies paid by New York City relating to clean-up and emergency services, and monies potentially owed to individuals who suffered property damage as a result of the Wall collapse.  (Id. at ¶¶ 46, 50-55.)

breach of the terms and conditions of the parties' contract of insurance. (See Def. Virginia's Br. in Supp. of Mot. to Dismiss ("Virginia Br.") 8-9.)  In support of its motion for judgment on the pleadings, USF&G contends that it bears no responsibility to provide insurance coverage to Langan, for events arising out of the Wall collapse, as the collapse did not occur during any USF&G policy period.  (See Def. USF&G's Br. in Supp. of Mot. to Dismiss ("USF&G Br.") 6-7.)

## II.  FACTUAL BACKGROUND[3]

This action arises, as a result of an underlying claim for property and other damages brought by Castle Village against Langan and other parties, following the collapse of a large retaining wall on Castle Village's property, in Inwood, New York.

In January 2002, Castle Village retained Langan to perform engineering and related services necessary for the inspection and evaluation of all existing conditions of the Wall, and to assess and recommend the short and long term measures for monitoring, maintaining, and repairing the Wall.  (Castle Village Verified Fourth Am. Compl. at ¶ 25.)  Castle Village and Langan, therefore, entered into several agreements regarding Langan's future performance, which were approved on January 7, 2002; June 6, 2002; August 9, 2002; September 13, 2002; February 27, 2003; December 16, 2003; January 7, 2004; and September 2, 2004.  (Id. at ¶ 26.)

---

[3]Virginia failed to include a statement setting forth uncontested material facts, pursuant to L. CIV. R. 56.1.  Instead, Virginia included in its brief a Statement of Facts section, which does not conform with the requirements of L. CIV. R. 56.1.  "A moving party's failure to comply with Rule 56.1 is itself sufficient to deny its motion."  Kee v. Camden County, No. 04-0842, 2007 WL 1038828, at *4 (D.N.J. Mar. 30, 2007); see also Bowers v. Nat'l Collegiate Athletic Ass'n, 9 F. Supp. 2d 460, 476 (D.N.J. 1998).  This failure to comply with the rules governing this Court provides a basis for denial of Defendant's motion.  This Court will nonetheless consider the merits of Defendant's arguments supporting entry of summary judgment.

On May 12, 2005, a large section of the Wall collapsed, falling onto the sidewalk and roadways, causing property damage, and blocking the sidewalk, Riverside Drive and a portion of the northbound Henry Hudson Parkway in the vicinity of the Wall.  The falling portions of the Wall and debris also hit and damaged the personal property of third parties, including one or more automobiles.  (Id. at ¶ 35; see also Hough Cert., Ex. A at ¶ 16.)

As a result of this collapse, Castle Village brought suit[4] against several entities, including Langan, in the Supreme Court of the State of New York.  (Hough Cert., Ex. A at ¶ 17; see generally, Castle Village Verified Fourth Am. Compl.)  Castle Village

> alleged that [Langan] committed professional negligence and breached several engineering and related service agreements between [Langan] and Castle Village in connection with services that [Langan] provided to Castle Village, commencing in the second half of 2002, with respect to the [r]etaining [w]all prior to the [c]ollapse . . . .  Castle Village also seeks damages against [Langan] as a result of allegedly defective construction work performed by Morris Park Contracting Corporation ("Morris Park") . . . in the summer and fall of 2004 at the Castle Village Property.  Castle Village seeks damages in excess of $20,000,000.00.

(Hough Cert., Ex. A at ¶ 17.)

---

[4]Castle Village has filed a total of four complaints in the underlying action.  Castle Village's Third Amended Complaint, dated March 22, 2007, names, for the first time, Morris Park and Langan as defendants. (See Affidavit of Burt M. Garson (Garson Aff.), Ex. G.)  The complaint generally alleges that (1) Castle Village hired Morris Park at the recommendation of Langan; (2) Langan was to supervise, monitor, inspect, and approve Morris Park's work; and (3) Langan certified that Morris Park's work was properly completed.  (Id., ¶¶ 27-31.)

In June 2007, Castle Village sought leave of the Supreme Court of the State of New York, to file a fourth amended complaint, and add an additional claim "alleging that Langan knew or should have known of the imminence of the [c]ollapse but failed to warn Castle Village."  (Id. at ¶¶ 1, 18.)  On December 27, 2007, Judge Helen E. Freedman granted Castle Village's motion for leave to amend.  (See Letter from Burt M. Garson, Attorney for Plaintiff, Ex. A, Jan. 2, 2008.) Castle Village added two claims against Langan in its Verified Fourth Amended Complaint.  The first cause of action stated a claim for negligent misrepresentation and failure to warn, while the second claim sounded in negligence and a failure to warn.  (Castle Village Verified Fourth Am. Compl. ¶¶ 108-126.)

As a result of Castle Village's suit against it, Langan initiated the instant action against

several insurance providers, including defendants, Virginia and USF&G.  Langan alleges that

USF&G, and other insurers, sold comprehensive general liability ("CGL") and excess liability

insurance policies to Langan between April 22, 2002 and September 1, 2006.  (Hough Cert., Ex.

A at ¶¶ 20-21.)   Virginia sold CGL policies to Morris Park, and Langan was named as an

additional insured on these policies.  (Id. at ¶¶ 23-24.)  Langan claims that, under the insurance

policies, both Virginia and USF&G must pay the costs of litigating the underlying claims, and

indemnify Langan for monies that Langan may be legally obligated to pay to Castle Village for

costs relating to the Wall collapse.  (Id. at ¶¶ 30-31, 34-35.)


### III.  STANDARD OF REVIEW

**A.     Motion for Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(c), when the moving party

demonstrates that there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23; Cascara v.

Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury

could return a verdict for the non-movant, and is material if, under the substantive law, it would

affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).  This Court views "the facts in

the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor."

Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted).  "In considering a

motion for summary judgment, a district court may not make credibility determinations or

engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d

Cir. 2004) (quoting Anderson, 477 U.S. at 255).

　　　　When the moving party has the burden of proof on an issue at trial, that party has "the

burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a

directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)

(quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d

1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party

must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on

all the essential elements of its case on which it bears the burden of proof at trial, no reasonable

jury could find for the non-moving party." (emphasis in original) (internal citations omitted)).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the

burden on the moving party may be discharged by 'showing'–that is, pointing out to the district

court–that there is an absence of evidence to support the nonmoving party's case." Celotex, 477

U.S. at 325.

　　　　Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v.

Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The non-movant cannot rest on mere

allegations and instead must present actual evidence that creates a genuine issue as to a material

fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d

1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to

repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir.

1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts

showing that there is a genuine issue for trial").

**B.      Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings, pursuant to FED. R. CIV . P. 12(c), may be filed

after the defendant has filed an answer to the complaint.  Mele v. Fed. Reserve Bank of N.Y.,

359 F.3d 251, 253 n.1 (3d Cir. 2004).  The standard for a motion for judgment on the pleadings

under FED. R. CIV. P. 12(c), is the same as that for a motion to dismiss under FED. R. CIV. P.

12(b).  See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in

the applicable legal standards.").

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to

articulate "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S.

Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000)

(stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a

claim).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 127 S.

Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "While a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P.

8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.

at 1965 (internal citations omitted).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civil 2d § 1357 at 340) (2d ed. 1990).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him to relief, not whether that person will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007).

## IV.  DISCUSSION

**A.       Virginia's Motion for Summary Judgment**

Virginia contends that summary judgment is appropriate in the instant action, because

Langan's "delay in providing notice to Virginia, is a direct breach of the insuring contract."

(Virginia Br. 9).  Langan maintains that, in this action, the determination of timeliness of its

notification is, itself, a genuine issue of material fact, which precludes summary judgment.

(Langan's Brief in Opposition to Virginia's Motion for Summary Judgment ("Pl. Summary

Judgment Br."), p. 8.)  This Court agrees.

New York law requires compliance with the notice provisions of a liability policy as a

condition precedent to coverage.  See Security Mut. Ins. Co., v. Acker-Fitzsimons Corp., 31

N.Y.2d 436, 440 (1972); Reynolds Metal Co. v. Aetna Cas. & Sur. Co., 259 A.D.2d 195, 199 (3d

Dep't 1999).  "Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy

. . . The insurer need not show prejudice before it can assert the defense of noncompliance."

Acker-Fitzsimons, 31 N.Y.2d at 440.[5]

While there is no precise formula to determine what constitutes timely compliance with

notice provisions, courts generally construe policy clauses requiring notice "as soon as

practicable," to require notice "within a reasonable time after the duty to give notice has arisen."

Christiania Gen. Ins. Co., v. Great American Ins. Co., 979 F.2d 268, 275 (2d Cir. 1992);

---

[5]The parties disagree as to whether New York or New Jersey law applies to this dispute.
However, a choice-of-law determination is unnecessary at this stage because, under either
analysis, the ultimate result is the same, as genuine issues of material fact exist.  See Port Auth.
v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999) ("A federal court sitting in diversity applies
the choice of law principles of the forum state. Under New Jersey law, when the same result . . .
is required under the laws of all relevant jurisdictions, the court need not decide which law would
apply to the action." (internal citations omitted)).

Acker-Fitzsimons Corp., 31 N.Y.2d at 441.  The duty to notify arises when "the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim."  Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995); see also Mount Vernon Fire. Ins. Co. v. DLRH Assoc., 967 F. Supp. 105, 108 (S.D.N.Y. 1997); see also Christiania Gen. Ins. Corp. v. Great Amer. Ins. Co., 979 F.2d 268, 275-76 (2d Cir. 1992); Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos., 748 F.2d 118, 121 (2d Cir. 1984).

Failure to give timely notice may be excused by proof that the insured either lacked knowledge of the occurrence or had a reasonable belief of nonliability.  Acker-Fitzsimons Corp., 31 N.Y.2d at 441.  Determining the reasonableness of an insured's failure to provide timely notice to an insurer ordinarily presents a question of fact, precluding summary judgment. Kaliandasani v. Otsego Mut. Fire. Ins. Co., 256 A.D.2d 310 (2d Dep't 1998).  A delay in notice may, however, be unreasonable as a matter of law, and summary judgment may be granted in favor of the insurer, when no excuse for the delay is put forth or the proffered excuse is without merit.  See Olin Corp. v. Insurance Co. of North Am., 966 F.2d 718, 724 (2d Cir. 1992).  The insured bears the burden of proving that the delay was excusable.  Id.

In the instant action, Langan does not dispute that it had actual knowledge of the Wall Collapse.  Instead, Langan asserts that, it "did not know that Castle Village intended to plead a claim against Morris Park . . . [or] that Castle Village would plead claims against Langan based on the alleged actions of Morris Park."  (Pl. Summary Judgment Br., p. 4.)  Rather, Plaintiff contends, it was not notified of any action against it until March 27, 2007, when it received Castle Village's third amended complaint, which "seeks damages against Langan for the first time based on Morris Park's allegedly defective workmanship on the property."  (Id.)  Langan

further asserts that it notified Virginia of Castle Village's claim on March 27, 2007, the same day

Langan received the third amended complaint, albeit nearly two years after the Wall Collapse.

(Id., p. 5.)

Virginia argues that Langan's two-year notification delay is unreasonable,

notwithstanding Langan's stated belief in nonliability.  In support of its argument, Defendant

posits that some courts have found shorter periods of delay in giving notice to be unreasonable as

a matter of law.  See, e.g., RMD Produce Corp. v. Hartford Cas. Ins. Co., 37 A.D.3d 328 (1st

Dep't 2007) (one year notification delay deemed unreasonable); see also Sirignano v. Chicago

Ins. Co., 192 F. Supp. 2d 199 (S.D.N.Y. 2002) (one and a half year delay deemed unreasonable

under New York law); Acker-Fitzsimons Corp., 31 N.Y.2d 436 (nineteen month delay deemed

unreasonable).

In all of these cases, however, the length of the delay was neither the only, nor primary,

factor considered in the courts' analyses.  Rather, courts evaluating notification delays consider

facts surrounding the incident, which give rise to the insurance claim, and the insureds'

reasonable expectation of liability.  See, e.g., Duffin v. Colonial Indem. Ins. Co., 270 A.D.2d

942, 943 (4th Dep't 2000) (three year delay in notification deemed unreasonable where insured

was aware that individual was involved and injured in an altercation at insured's restaurant,

where restaurant had been sued several times before.)

In the instant action, Langan has proffered sufficient facts to withstand Virginia's motion

for summary judgment.  Virginia's argument that Langan should have reasonably known about

the Wall collapse, due to local news coverage, is noted, but not persuasive at this stage in the

litigation.  Langan does not claim ignorance of the actual Wall Collapse.  Rather, Langan's

argument rests on its assertion that it did not anticipate being sued in connection with the

collapse.  Plaintiff has put forth a colorable claim to that effect.  Moreover, the moment Plaintiff

became aware of the pending litigation against it, Plaintiff notified Virginia, a further indication

of Langan's belief in its nonliability.

While some courts have found a delay in notification to be unreasonable, as a matter of

law, others maintain that reasonableness is a factual issue to be determined by the fact-finder.

See, e.g., Kreger Truck Renting Co. v. Am. Guar. & Liab. Ins. Co., 213 A.D.2d 453, 454 (2d

Dep't 1995).  The case law is not consistent.  Without a more clear indication that Langan

expected to be sued, but persisted in delaying notification, this Court is loath to grant Virginia's

motion for summary judgment.  The motion is denied.

**B.      USF&G's Motion for Judgment on the Pleadings**

In its motion for judgment on the pleadings, USF&G argues that, "the May 2005 Collapse

and any damage flowing from it occurred outside the time period covered by USF&G."[6]

(USF&G's Brief in Support of its Motion for Judgment on the Pleadings ("USF&G Br."), p. 3.)

Plaintiff Langan counters and claims that the Underlying Claims set forth in the Castle Village

complaint allege actual property damage during the USF&G policy period, or in the alternative,

that the Castle Village complaint alleges continuous damage during the policy period.  (See

Langan's Brief in Opposition to USF&G's Motion for Judgment on the Pleadings ("Langan

---

[6]USF&G notes that two other defendant insurers previously made a similar motion to dismiss Langan's claims against them in the instant action.  (USF&G Br., p. 2.)  By opinion and order date April 4, 2008, and March 31, 2008, respectively, this Court found in defendants' favor, dismissing the claims against them.  See Langan Eng'g & Envtl. Serv., Inc., v. Greenwich Ins. Co., No. 07-2983, Docket Entry Nos. 80, 78 (Opinion and Order of Dismissal) (D.N.J. 2008).

Pleadings Br."), p. 5-6.)

### 1.    The Coverage Period

In order to determine whether Langan's claims are covered by the USF&G insurance

policy, this Court must first look to the scope of coverage, as defined by the policy.  The USF&G

policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury," "property damage," "personal injury" or
> "advertising injury" to which this insurance applies. . . .   This insurance applies
> to: (1) "[b]odily injury" or "property damage":  (a) caused by an "occurrence" that
> takes place in the "coverage territory"; and (b) that occurs during the policy
> period.

(Certification of Meghan Goodwin ("Goodwin Certif."), Ex. A at 81.)  USF&G's policy with

Langan was in effect, in total, from May 20, 2003 to September 1, 2004.  (Goodwin Certif., Ex.

A at 1; Ex. B at 1; Ex. C at 1.)

### 1.    Actual Damage

Langan attempts, for a second time, to transform a negligence action into a property

damage claim.  In doing so, Langan relies primarily on paragraphs 32, 33, 102, 104, and 115-118

of Castle Village's Verified Fourth Amended Complaint.  According to the Castle Village

complaint, Langan was to, and did, supervise Morris Park in an agreed upon construction

contract.  (Castle Village Verified Fourth Am. Compl. ¶ 32-33.)  Castle Village further alleges

that Langan did not perform its services adequately, because it failed to notify Castle Village of

the Wall's deteriorating conditions.  (Id. at ¶¶ 112-115.)  Specifically, Castle Village alleges that,

> [A]fter [Langan] arrived on the Castle Village site . . . the Wall was exhibiting
> deterioration at the locations where the Wall ultimately failed; . . . a section of the
> Wall within the failure zone was moving continuously in both a westerly and
> northerly direction prior to the failure of that section of the Wall; . . . surface

cracks parallel to the Wall and sinkholes of increasing size and dimension were developing on the grounds behind the Wall; . . . the exterior wythe of the Wall was pulling away from the balance of the Wall in the section that ultimately failed; . . . bulges were developing in the Wall in the same area or areas where the Wall ultimately failed; and . . . "global deep seated movements" were occurring within the Wall in the *weeks and months prior to failure of the Wall.*

(Id. at ¶ 115) (emphasis added).  "Notwithstanding Langan's knowledge of the [Wall's deteriorating conditions], and its knowledge that if nothing were done, the Wall would fail, Langan failed to warn Castle Village or anyone else of the known dangers."  (Id. at ¶ 116.)

While it may be accurate for Langan to assert that damage to the Wall existed during the coverage period for the USF&G policy, there is no allegation that Langan caused the actual property damage.  (See generally, Castle Village Verified Fourth Am. Compl.; see also Hough Cert., Ex. A.)  In fact, Castle Village's complaint assigns fault to another party entirely, the Mueser Rutledge Consulting Engineers, a third-party defendant in the Castle Village action.  (Id. at ¶¶ 112, 114.)   The Castle Village complaint does not attribute any actual property damage to Langan.  Langan's Complaint, as well as Castle Village's Verified Fourth Amended Complaint, expressly provide that the property damage forming the basis of the Underlying Claims is the Wall collapse on May 12, 2005.  (Hough Cert., Ex. A at ¶¶ 3, 17; see also Castle Village Verified Fourth Am. Compl. ¶ 35.)  The actual damage–that is, the Wall Collapse–occurred more than eight months after the expiration of the USF&G policy. Castle Village's allegations of inadequate notification and performance, at best, create an action in negligence, not a property damage claim.

## 2.    Continuous Trigger Theory

Langan further asserts that, under a "continuous trigger theory," *actual* property damage

occurred not only on May 12, 2005, the date of the Wall Collapse, but also during the earlier

USF&G policy period.  (Pl. Pleadings Br., p. 6.)  In support of its argument, Langan notes the

Castle Village complaint "alleges that property damage, consisting of the continuous movement,

deterioration, increasing cracks, and developing bulges in the wall, was apparent when Langan

first entered the site years before the collapse of the wall." (Pl. Pleadings Br., p.7.)  Plaintiff

contends that these factors constitute "continuous property damage," which occurred during the

relevant policy period, and is, therefore, covered under the terms of the USF&G policy.  (Id.)

"In general, insurance policies cover losses resulting from 'occurrences' that take place

during the policy period."  Quincy Mut. Fire Ins. Co. v. Borough of Bellmawr, 799 A.2d 499,

502 (N.J. 2002).  "Therefore, when an insured has been covered by several policies over the

relevant period of time, identifying the appropriate trigger of coverage, or when an occurrence

took place, will be critical in determining which insurer is liable for the damages that have

accrued." Id. at 503.

In this Circuit,

> the determination of when an occurrence happens must be made by reference to
> the time when the injurious effects of the occurrence took place.  There can be no
> question but that the aspect of the occurrence which must take place within the
> policy period . . . is the result, that is, the time when the accident or injurious
> exposure produces personal injury.

Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61-62 (3d Cir. 1982) (internal

citations omitted); see also Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co., 483

A.2d 402, 409 (N.J. 1984) (quoting Muller Fuel Oil Co. v. Ins. Co. of N. Am., 232 A.2d 168, 175

(N.J. Super. Ct. 1967) ("As a general rule the time of the 'occurrence' of an accident within the

meaning of an indemnity policy is not the time the wrongful act was committed but the time

when the complaining party was actually damaged.  'The time of the accrual of the insured's

liability is the determining factor, not the time of an event which ultimately results in

liability.'")); Wrecking Corp. of Am. v. Ins. Co. of N. Am., 574 A.2d 1348, 1350 (D.C. Cir.

1990) (citing Aetna Cas. & Sur. Co. v. PPG Indus., Inc., 554 F. Supp. 290, 294 (D. Ariz 1983)

("[T]he prevailing rule is that 'property damage occurs' at the time the damage is discovered or

when it has manifested itself.")).

The Third Circuit reasons that its "adoption of the 'effect' test for determining when the

occurrence took place is dictated by the reasonable expectations of the insured in purchasing a

policy of this type." Appalachian Ins. Co.,  676 F.2d at 62.

Under New Jersey law, however, "when progressive indivisible injury or damage results

from exposure to injurious conditions for which civil liability may be imposed, courts may

reasonably treat the progressive injury or damage as an occurrence within each of the years of a

[comprehensive general liability] policy.  That is the continuous-trigger theory for activating the

insurers' obligation to respond under the policies." Owens-Illinois, Inc. v. United Ins. Co., 138

N.J. 437, 479 (N.J. 1994).

The Third Circuit has recognized only a few appropriate applications of the continuous

trigger theory, including claims of injury resulting from asbestosis exposure, and property

damage claims resulting from environmental contamination.  Chemical Leaman Tank Lines, Inc.

v. Aetna Cas. & Sur. Co., 89 F. 3d 976, 995 (3d Cir. 1996) (citing Owens-Illinois, 138 N.J. at

983).  Likewise, other courts have explicitly reserved application of the continuous trigger theory

to those categories.   See, e.g., Fed. Ins. Co. v. Dentsply Int'l Inc., No. 06-991, 2007 U.S. Dist.

LEXIS 85442, *12 n.5 (M.D. Pa. Nov. 19, 2007); see also Wrecking Corp., 574 A.2d at 1350;

16

Quincy Mut. Fire Ins. Co., 799 A.2d at 503.

Plaintiff contends that the property damage surrounding the Wall Collapse falls within this limited exception.[7]  (See Langan Pleadings Br. 6-7.)  This Court disagrees.  "While the continuous trigger theory remains useful and, indeed, quite powerful, it should not be applied where it is inappropriate to do so."  Prolerized Schiabo Neu Co. v. Hartford Accident and Indem. Co., 990 F. Supp. 356, 364 (D.N.J. 1997).  This Court is unwilling to extend the theory beyond its application to asbestos, toxic tort, environmental spills, and related cases.

———————————

[7]In support of its argument that New Jersey courts apply the continuous trigger theory "to all sorts of property damage," Plaintiff refers this Court to Steinbauer v. East Coast Acquisitions, 2007 WL 2593007 (N.J. Super. Ct. App. Div. Sept. 11, 2007), an unpublished New Jersey Appellate Division case, which was decided prior to Langan filing its opposition to the Greenwich and Ohio Casualty Motions to dismiss.  (Pl. Pleadings Br. 6-7.)  In Steinbauer, an insured successfully sought indemnification for mold and water damage to an apartment building, which occurred outside of the policy period, but was caused by a water pipe, which had burst during the policy period.  2007 WL 2593007, *1.

Defendant is correct in its assertion that Steinbauer is inapposite to the instant action, because "(1) it deals with mold contamination, not a structural collapse; [and] (2) it does not substantiate Langan's claim that the continuous trigger theory of liability applies to "all sorts of cases" [in that, Steinbauer only addresses water and mold damage caused by a water pipe burst]."  (USF&G's Brief in Reply and Further Support for its Motion for Judgment on the Pleadings, p. 7.)  The factual difference between the instant action and Steinbauer is clear: in Steinbauer, there was an occurrence of property damage that resulted in further water and mold damage; in the instant action there is no occurrence of property damage, precedent to the Wall Collapse, alleged by Castle Village.

Moreover, Steinbauer, itself, seems to undermine Langan's argument, when it cites with approval, Deodato v. Hartford Insurance Co., 154 N.J. Super. 263 (App. Div. 1977), a case in which the New Jersey Appellate Division found that the insurer had no duty to indemnify the insured.  In Deodato, the plaintiff claimed that the insured negligently constructed a roof, which eventually collapsed.  The Appellate Division affirmed the decision of the lower court, finding that the property damage occurred upon collapse of the roof, not during the construction or the lifetime of the roof.  154 N.J. Super. 263.

## V.  CONCLUSION

For the reasons stated above, the motion of Defendant Virginia Surety Insurance Company, Inc., for summary judgment, pursuant to FED. R. CIV. P. 56; and the motion of Defendant United States Fidelity and Guaranty Company, for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), are granted.  The motion of Plaintiff Langan Engineering and Environmental Services, Inc., to strike, or in the alternative, for leave to file a sur-reply, is denied, as moot.

Date: December 5, 2008

                            S/Joseph A. Greenaway, Jr.
                            JOSEPH A. GREENAWAY, JR., U.S.D.J.